120 So.2d 662 (1960)
HOUSECRAFT DIVISION OF THE SOUTHERN SIDING COMPANY
v.
Eddie JONES and Mrs. Mary Jones, his Wife.
No. 21381.
Court of Appeal of Louisiana, Orleans.
May 23, 1960.
Polack & Rosenberg and Lucien M. Gex, Jr., New Orleans, for plaintiff and appellant.
Lionel R. Collins, Gretna, and Revius O. Ortique, Jr., New Orleans, for defendants and appellees.
McBRIDE, Judge.
Plaintiff, a copartnership, brought this suit to recover $1,813, from defendants, *663 Eddie and Mary Jones which sum allegedly represents the aggregate of labor performed and material cut for the job, delivered but refused by defendants, plus commissions paid, overhead expenses, and anticipated profit due plaintiff as the result of defendants' breach of a signed building contract. The contract calls for plaintiff to build two rooms onto defendants' house, install a concrete porch, and to provide certain materials to finish the interior of the two rooms, which finishing work was to be done by defendants themselves. The contract price was the lump sum of $2,495.
Defendants in answer denied all of the allegations of plaintiff's petition, except to admit that they signed a contract which the agent of plaintiff represented to them covered the construction of the cement porch only. Defendants further answered to the effect that after the porch was constructed, which was at a time before plaintiff accepted or signed the contract, they requested plaintiff's representative not to proceed further with any work except to build the porch and to send them a bill for the cost thereof, which bill was never sent to them.
The district judge was of the opinion that the defendants receded from the contract prior to its acceptance in writing by the plaintiff and, therefore, they were liable only for the cost of the porch and he accordingly rendered judgment in plaintiff's favor for the sum of $165, which sum represented the amount plaintiff paid the subcontractor for constructing the porch, plus an attorney's fee of 20 percent as provided for in the contract. The plaintiff has appealed contending that the judgment should be substantially increased in amount.
Defendants insist they only wanted plaintiff to build the porch and contracted for no other work. They both testified they have little or no education and were unable to read and did not know the contents of the contract when they signed it. However, no charge of fraud or error is made, and in the absence of such charge, under our well-established jurisprudence they cannot be heard to complain that the contract should only have provided for the construction of the porch and for no other work. In Boullt v. Sarpy, 30 La.Ann. 494, the Supreme Court stated "signatures to obligations are not mere ornaments," and in Snell v. Union Sawmill Co., 159 La. 604, 105 So. 728, 730, it was said:
"If a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentively whilst this is being done. Murphy v. Hussey, 117 La. 390, 399, 41 So. 692; Baker v. Myatt, Dicks Motor Co., 12 Orleans App. 281."
See, also, McTee & Co., Inc. v. Brown Funeral Home, Inc., La.App., 183 So. 558; Jeffcoat v. Hammons, La.App., 160 So. 182; McCasky Register Co. v. Smith, 13 La. App. 557, 128 So. 189.
Defendants are bound by their contract. They affixed their signatures thereto at the behest of plaintiff's agent on July 18, 1957, but for some reason or other the contract was not accepted by plaintiff in writing until September 2, 1957. The delay in acceptance is not explained and it appears work in connection with the building of the porch had already commenced before plaintiff made the formal acceptance. The porch was completed on September 5, 1957. The contract contains provisions to the effect that it would not become binding upon plaintiff until plaintiff accepted it in writing, the owners agreeing that when it is so accepted it would become a binding contract. We do not think the fact that plaintiff made its acceptance only after the commencement of the work affects the binding quality of the contract; therefore, it is unnecessary to decide whether the commencement of the work by plaintiff was an effective tacit acceptance.
Defendants in a vague way testified that before the agreement had been accepted by plaintiff, they gave instructions to plaintiff's *664 representative to do no work except construct the porch, but the evidence convinces us that defendants did not endeavor to recede from their agreement until September 27, at which time plaintiff had signed, the porch work was completed, and material for the other work had been delivered to the job site, and, of course it was then too late for defendants to cancel the contract without liability.
The record shows that on the day the porch was finished, September 5, 1957, defendants applied to a local lending institution for a $2,700 loan to pay for the job, the loan being approved September 20, 1957, and as late as this date the cancellation of the contract had not been made.
LSA-C.C. art. 2765 contains the following provisions:
"The proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require."
The proper method of ascertaining the amount the undertaker would be entitled to recover as a result of defendants' order to stop the work is clearly set forth in the case of Guidry & Swayne v. Miller, 217 La. 935, 47 So.2d 721, 723, wherein the Supreme Court said:
"The correct way to ascertain the profit, if any, which plaintiff would have made had it been permitted to complete the work as contemplated by the contract and according to the plans and specifications is to ascertain with reasonable certainty just what amount it would have been necessary for the plaintiff to expend for labor and materials to complete the construction of the dwelling as contemplated by the contract and pursuant to the plans and specifications. To this amount, whatever it might be, should be added the total of the amount expended by plaintiff up to the time of the breach of the contract and the amount for which it is liable. * * *"
Plaintiff concedes it is not entitled to judgment for $1,813 as prayed for in the petition and in argument and in brief claims that the correct amount is as thus itemized:

"Cost of Constructing Porch ----- $165.00
Commission Paid ----------------- 100.00
Piers --------------------------- 14.95
Building Permit------------------ 6.50
Anticipated Profit--------------- 499.00
 _______
 $785.45"

The trial court allowed the $165 paid the subcontractor for constructing the porch, which was correct. Plaintiff paid its solicitor, or salesman, who secured the contract, the sum of $100, and in connection with the work done it expended $14.95 for piers and paid $6.50 for the building permit, which items it is also entitled to recover. However, the claim for the anticipated profit of $499 cannot be allowed at this time for the reason there is no adequate proof that plaintiff would have earned such amount as its profit had the contract not been cancelled. Plaintiff's General Manager testified that the profit would have been in that amount, but his estimate is not supported by evidence showing with reasonable certainty just what amount it would have been necessary for the plaintiff to expend for labor and materials to complete the construction which could be used as the base from which the profit could be ascertained. The General Manager's testimony is entirely too vague and indefinite to be useful. For example, he could not estimate the cost of material, nor say just what type of materials would be used on the job or what labor, in detail, would be required.
Rather than dismiss plaintiff's suit insofar as the anticipated profit is concerned, or to nonsuit plaintiff as to that item, we think that in all fairness this case should be remanded to the lower court for the purpose of receiving further testimony on the question of what plaintiff's profit *665 would have been had the contract continued. We conceive it to be the duty of an appellate court to make a remand in any instance where the ends of justice require it, and we believe that this is the type of case in which a remand for further evidence would be in order. Plaintiff has proven its right to a judgment for $286.45, and the trial judge is instructed to receive further evidence as above indicated and to render such further judgment on the question of profit as in his opinion is necessary. The judgment against defendants is to condemn them to pay plaintiff's attorney a fee of 20 percent of the amount thereof in accordance with the provisions of the contract.
For the reasons above assigned, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that the matter be remanded to the lower court for such proceedings as the law requires in consonance with our above instructions; defendants are to pay the costs of the lower court and costs of appeal are to await a final determination of the matter.
Reversed and remanded.
REGAN, J., absent, takes no part.