845 So.2d 377 (2003)
Mary BEL, Individually and on Behalf of the Estate of Her Husband, Douglas Bel, Linda B. Mire and Carolyn B. Heard
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Allstate Insurance Company, Regal Insurance Company, Craig Lewis, Individually and dba Craig Lewis State Farm Agency.
No. 2002 CA 1292.
Court of Appeal of Louisiana, First Circuit.
February 14, 2003.
Writ Denied May 30, 2003.
*378 Craig J. Robichaux, Mandeville, Counsel for Plaintiffs/Appellants Mary Bel, Linda B. Mire, and Carolyn Heard.
Adrianne L. Baumgartner, Covington, Counsel for Defendant/Appellee State Farm Mutual Automobile Insurance Company and Craig Lewis, individually and dba Craig Lewis State Farm Agency.
Laura S. Schneidau, Metairie, Counsel for Defendant Regal Insurance Company.
Barbara Stavis Wolf, Covington, Counsel for Defendant Allstate Insurance Company.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
GUIDRY, J.
In this wrongful death and survival action, plaintiffs, Mary Bel, individually and on behalf of the estate of her husband, Douglas Bel, Linda B. Mire, and Carolyn B. Heard, appeal the trial court's granting of defendant's, Craig Lewis, individually and d/b/a Craig Lewis State Farm Agency (Craig Lewis), peremptory exception raising the objection of prescription/peremption. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
On May 3, 1997, Douglas Bel was involved in a vehicular accident wherein he was fatally injured. On the date of the accident, Douglas Bel, and his wife Mary Bel, had in effect an automobile insurance policy with State Farm Mutual Automobile Insurance Company (State Farm). This policy provided for 100/300 limits on liability coverage as well as 100/300 limits on uninsured/underinsured motorist (UM) coverage. Additionally, Douglas and Mary Bel had a Personal Liability Umbrella Policy *379 (PLUP) with a $1,000,000.00 limit on liability coverage. However, prior to the date of the accident, Douglas Bel executed a waiver on April 20, 1993, rejecting UM coverage under the PLUP on all vehicles.
As a result of the aforementioned accident, Mary Bel, individually and on behalf of the estate of her husband, Douglas Bel, Linda B. Mire, and Carolyn B. Heard filed a petition for damages on April 24, 1998, naming Craig Lewis, their State Farm agent, as a defendant, and alleging various acts of negligence in relation to the waiver of UM coverage under the PLUP.[1] Thereafter, on November 29, 2001, Craig Lewis filed an Exception of Prescription/Peremption and/or Motion for Summary Judgment, claiming that all of the plaintiffs' claims are preempted by the three-year peremptive period contained in La. R.S. 9:5606.
A hearing on Craig Lewis' exception/motion was held on February 20, 2002. In a judgment signed on March 8, 2002, the trial court granted Craig Lewis' exception raising the objection of prescription/peremption, and dismissed the plaintiffs' claims against Craig Lewis with prejudice. Additionally, the trial court found that in light of its ruling regarding peremption, Craig Lewis' motion for summary judgment was moot. Because this judgment was not designated as final, the record on appeal was supplemented with a revised judgment, signed by the trial court on July 12, 2002, which designated the judgment as final pursuant to La. C.C.P. art. 1915(B).

ASSIGNMENTS OF ERROR
The plaintiffs now appeal from this judgment and assert the following assignments of error:
1. The trial court erred as a matter of law in defining the scope of duty that Craig Lewis owed to Mary Bel to insure that her interests were properly insured consistent with her insuring needs.
2. The trial court erred in failing to find that Mary Bel [was] never given the option of insuring her interests.
3. The trial court erred in finding that Mary Bel's claim was preempted [sic].

DISCUSSION

Peremption
In support of his exception raising the objection of prescription/peremption,[2] Craig Lewis relies on La. R.S. 9:5606, which governs actions against insurance agents and reads:
A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, *380 arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
C. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.
D. The one-year and three-year periods of limitation provided in subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended. [Emphasis added.]
Peremption differs from prescription in several respects. While prescription prevents the enforcement of a right by legal action, but does not terminate the natural obligation, peremption extinguishes or destroys the right. Coffey v. Block, 99-1221, p. 6 (La.App. 1st Cir.6/23/00), 762 So.2d 1181, 1186, writ denied, 00-2226 (La.10/27/00), 772 So.2d 651. Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period. Accordingly, nothing may interfere with the running of a peremptive period; it may not be interrupted or suspended and there is no provision for its renunciation. Reeder v. North, 97-0239, p. 12 (La.10/21/97), 701 So.2d 1291, 1298. However, as an inchoate right, prescription, on the other hand, may be renounced, interrupted, or suspended. Dauterive Contractors, Inc. v. Landry and Watkins, A Law Partnership, 01-1112, p. 11 (La.App. 3rd Cir.3/13/02), 811 So.2d 1242, 1251.
Originally enacted in 1991, La. R.S. 9:5606 was amended by the legislature in 1999. The 1999 amendment substituted "peremptive" in subsection (C) for "preemptive" and added subsection (D), which expressly makes both the one-year and three-year periods of limitation peremptive. 1999 La. Acts 905 § 1. However, the three-year limitation period, at issue in the instant case, is regarded as peremptive in both the original enactment and the 1999 amendment.[3] As such, if a claim of negligence is not filed within three years of the alleged act, it is extinguished by peremption, regardless of whether or not it was filed within one year from the date of discovery. Huffman v. Goodman, 34,361 at 8, 784 So.2d at 725.
According to La. R.S. 9:5606(A), the three-year peremptive period commences on the date of the alleged act, omission, or neglect. In the instant case, *381 plaintiffs' petition alleges that Craig Lewis was negligent in misrepresenting the nature and type of coverage issued to and/or needed by Douglas and Mary Bel, in explaining the nature and purpose of UM coverage, and in misleading Douglas and Mary Bel into believing that UM coverage under the PLUP was not necessary as they already had UM coverage under their auto policy. Further, at the hearing on the exception/motion, plaintiffs argued that Craig Lewis, as Douglas and Mary Bel's agent, had a duty to either procure the insurance that they were seeking, or to advise them that he was unable to place that coverage.
The record shows that Douglas and Mary Bel met with Craig Lewis two or three times in an effort to reduce their premium. At these meetings, they discussed their insurance options, namely the implications of eliminating certain coverage, which included coverage under the PLUP. However, the Bels did not want to eliminate any of the coverage suggested by Craig Lewis. Some of these suggestions included eliminating comprehensive or raising their deductible. However, Mary Bel stated during her deposition that she did originally think of eliminating the PLUP altogether, but that Craig Lewis suggested that she and her husband keep the PLUP if they had assets to protect. Additionally, Mary Bel stated that Craig Lewis explained that they had UM coverage under their auto policy and therefore they did not need it under the PLUP.
Sometime after these meetings, Douglas Bel signed a waiver, rejecting UM coverage under the PLUP on April 20, 1993. Additionally, Mary Bel signed a form rejecting UM coverage under the PLUP on June 3, 1994. Mary Bel stated in her deposition that she did not think that there were any changes to her policy nor did she think that she discussed her coverage with Craig Lewis after she signed the rejection form in 1994. Therefore, any negligence on the part of Craig Lewis in misrepresenting the type of coverage or explaining the nature of UM coverage under the PLUP occurred on or before these dates.
Additionally, in regard to Craig Lewis' duty to procure the insurance Douglas and Mary Bel sought, such duty relates to the obtaining of the waivers rejecting UM coverage under the PLUP. It was at those times that Douglas and Mary Bel indicated what coverage they wanted Craig Lewis to place. Therefore, as the plaintiffs' petition for damages was not filed until April 24, 1998, five years after the waiver was signed by Douglas Bel and almost four years after Mary Bel signed a form rejecting UM coverage, it falls clearly outside the three-year period within which the action had to be filed.
Further, according to La. R.S. 9:5606(C), the only statutory exception to the three-year peremptive period is a claim of fraud. See also Coffey v. Block, 99-1221 at 7, 762 So.2d at 1186. Plaintiffs did not argue the application of the fraud exception in the trial court, nor have they alleged any actions of fraud on the part of Craig Lewis. Rather, to avoid the harsh implications of peremption, plaintiffs contend that because the insurance policy renewed every six months, each time that policy renewed, Craig Lewis misrepresented the nature of their coverage and breached his duty as Mary Bel's agent. As such, plaintiffs argue that there was a continuing tort or, in the alternative, that there was a new and distinct tort at each renewal.[4]
*382 We first address plaintiffs' continuing tort argument. In Saia v. Asher, 01-1038 at 7 n.9, 825 So.2d at 1262, involving professional accounting liability, we stated that "plaintiffs' assertion that defendants' actions constituted a continuing tort thereby suspending `prescription' is erroneous, as the time limitations provided by La. R.S. 9:5604 are peremptive and as such cannot be suspended." See also Dauterive Contractors, Inc. v. Landry and Watkins, A Law Partnership, 01-1112 at 26, 811 So.2d at 1259 (noting that continuous tortious conduct and continuous damages may suspend prescription, but the pertinent time limitation was peremptive, and peremption may not be suspended). Because the time limitation in the instant case is peremptive, and the principle of continuing torts is a suspensive principle, ineffective against the effects of peremption, we find the continuing tort doctrine inapplicable to plaintiffs' claims.
Plaintiffs also argue, in the alternative, that each renewal of the PLUP constituted a separate and distinct tort. In order for each renewal to be the basis of a separate tort, the complained of conduct must consist of separate and distinct acts, each of which gives rise to immediately apparent damages. See Bustamento v. Tucker, 607 So.2d 532, 540 (La.1992). However, we find that these renewals were nothing more than a continuation of the ill effects of an original unlawful act. See South Central Bell Telephone Co. v. Texaco, Inc., 418 So.2d 531, 533 (La.1982). It was at the time that Craig Lewis obtained Douglas and Mary Bel's signatures on the 1993 waiver and 1994 rejection respectively that any damage would have been sustained, being the loss of UM coverage under the PLUP. After the rejections were signed, the rejection of UM coverage under the PLUP remained effective for the life of the policy, and no additional rejection was necessary when a renewal was issued.[5]See La. R.S. 22:1406(D)(1)(a)(ii).
Further, Mary Bel stated in her deposition, as referenced above, that she did not change her coverage or discuss her coverage with Craig Lewis after she signed the rejection form in 1994. Therefore, after the rejections were signed, there was no occasion for Craig Lewis to misrepresent the nature of Douglas and Mary Bel's coverage or the implications of not having UM coverage.
Additionally, the 1993 signing of the waiver and 1994 signing of the form rejecting UM coverage under the PLUP presumably directed Craig Lewis to place the insurance desired, elimination of UM coverage under the PLUP. As the desired coverage was placed or in effect at those times, and continued for the length of the policy unless another form was submitted by the insureds, it cannot be said that Craig Lewis failed to procure the desired coverage after 1994, when no such desire to add UM coverage under the PLUP was expressed by either Douglas or Mary Bel after that time. Therefore, we find that the insurance policy renewals do not constitute separate and distinct torts, commencing the peremptive period anew at each renewal.
Therefore, based on the law and facts as outlined above, we find that the trial court was correct in its determination that plaintiffs' claims against Craig Lewis were *383 preempted. Though presumably filed within one year of their discovery that UM coverage under the PLUP had been waived,[6] the petition was not filed within the three-year peremptive period following the alleged act, omission, or neglect.

Motion for Summary Judgment
Because we find plaintiffs' claims are preempted by La. R.S. 9:5606, we further find their remaining assignments of error to be without merit, as they relate to the motion for summary judgment, which the trial court found, and we agree, is moot as a result of the ruling on peremption.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court and all costs of the appeal are to be borne equally by the appellants, Mary Bel, individually and on behalf of the estate of her husband Douglas Bel, Linda B. Mire, and Carolyn B. Heard.
AFFIRMED.
FITZSIMMONS, J., concurs and assigns reasons.
FITZSIMMONS, Judge, concurring with reasons.
I respectfully concur in the result. While the result of La.R.S. 9:5606 seems harsh, the role of the judiciary is limited to the interpretation of laws enacted by our legislative body.
NOTES
[1] The petition also named as defendants Anetta Leblanc, Melinda Leblanc, Regal Insurance Company, Allstate Insurance Company, and State Farm, none of whom are parties to the instant appeal.
[2] In regard to the procedural posture by which the issue of peremption was raised, we note that this court has held, as a general rule, that the peremptory exception raising the objection of no cause of action is the correct procedural device for raising the issue of peremption. See Saia v. Asher, 01-1038, p. 4 n.5 (La.App. 1st Cir.7/10/02), 825 So.2d 1257, 1259 n. 5 and citations found therein. However, in Saia v. Asher, 01-1038 at 4, 825 So.2d at 1259, we stated because the objection of prescription raised in a peremptory exception may assert any of the defenses set forth in Title XXVIPrescription of the Civil Code, and peremption is listed therein as a defense, the defendants in that case were correct in raising the issue of peremption via the peremptory exception raising the objection of prescription.
[3] Prior to the 1999 amendment, the one-year limitation period was construed by courts to be prescriptive in nature. See Huffman v. Goodman, 34,631, pp. 6-7 (La.App. 2nd Cir.4/4/01), 784 So.2d 718, 724, writ denied, 01-1331 (La.6/22/01), 794 So.2d 791. We do not address the issue of retroactive application of the 1999 amendment, as it is not necessary for our determination of the case, and it was not raised by the appellants in the trial court or on appeal.
[4] In the instant case, plaintiffs did not plead facts alleging a continuing tort in their petition, but introduced this argument for the first time at the hearing on Craig Lewis' exception/motion.
[5] According to La. R.S. 22:1406(D)(1)(a)(ii), "[t]he form signed by the insured or his legal representative which initially rejects coverage... shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement... policy is issued...."
[6] Plaintiffs state that they were not aware that there was no UM coverage under the PLUP until after Douglas Bel died on May 3, 1997. As their action was filed on April 28, 1998, it was filed within the one-year limitation period following their discovery of the alleged act, omission, or neglect.